UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ROYAL BRADFORD KEIFE,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

3:10-cv-0546-LRH-VPC

ORDER

      Before the court is defendant Metropolitan Life Insurance Company's ("MetLife") motion to dismiss. Doc. #27.[1] Plaintiff Royal Bradford Keife ("Keife") filed an opposition (Doc. #35) to which MetLife replied (Doc. #39).

      Also before the court are Keife's motion to supplement his opposition, or in the alternative to stay the motion to dismiss (Doc. #43) and MetLife's motion for leave to file a sur-reply to Keife's supplemental opposition (Doc. #50).

**I.    Facts and Background**

      Non-party Betty May Keife had a $12,750 life insurance policy with defendant Metropolitan Life Insurance Company ("MetLife") through the Federal Employees Group Life Insurance

---
[1] Refers to the court's docket number.

("FEGLI") Program.[2] Plaintiff Royal Bradford Keife was the named beneficiary under the policy.

On February 28, 2008, Betty May Keife died. In March 2009, Keife contacted MetLife about the policy and MetLife sent Keife a claims folder which provided that if the benefit amount equaled or exceeded $5,000.00 an interest-bearing account, known as the Total Control Account ("TCA"),[3] would be opened in his name and a checkbook would be mailed to him. On or about March 16, 2009, Keife executed and submitted the completed claims form.

On April 2, 2009, MetLife established a TCA in Keife's name in the amount of $12,959.09.[4] Keife closed his TCA in July 2009, by writing himself a check for the full account balance. Subsequently, on July 30, 2010, Keife filed the present class action complaint against MetLife. Keife filed an amended complaint in August 2010, (Doc. #1, Exhibit 1) and a second amended complaint on September 21, 2010 (Doc. #12, Exhibit 1). The second amended complaint alleges four causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duties arising from confidential relationships; and (4) breach of the covenants of good faith and fair dealing. Doc. #12, Exhibit 1.

On October 18, 2010, the parties stipulated to the dismissal of Keife's second, third, and fourth causes of action. Doc. #24. Thereafter, MetLife filed the present motion to dismiss Keife's remaining cause of action for breach of contract. Doc. #27.

---

[2] The FEGLI Program was established in 1954 by Congress with the passage of the Federal Employees Group Life Insurance Act ("FEGLIA"), found 5 U.S.C. § 8701, et seq. Pursuant to FEGLIA, the United States Civil Service Commission, which has been succeeded by the United States Office of Personnel Management ("OPM"), and MetLife entered into a contract under which MetLife became responsible for providing life insurance to federal employees. This contract between the federal government and MetLife, referred to as the "FEGLI Policy," took effect in 1954 and has been amended seventy-six (76) times since 1954. A copy of the FEGLI Policy is attached as Exhibit A to MetLife's corrected exhibits to its motion to dismiss (Doc. #38).

[3] The TCA is MetLife's version of a retained asset account. The TCA is an interest-bearing account on which the account holder may write checks at any time. A TCA represents a MetLife liability which its pays from its general corporate assets as checks are written on the account.

[4] The amount initially credited to Keife's TCA includes the $12,750 in death benefits plus interest earned on the death benefits from the date of Betty May Keife's death in February 2008.

## II. LEGAL STANDARD

**A. Motion to Dismiss**

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing

3

1 more than state a legal conclusion—even if that conclusion is cast in the form of a factual
2 allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to
3 dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be
4 plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

**B. Contract Interpretation**

6 Under Nevada law, insurance policies are contracts, which must be enforced according to
7 their terms. *Continental Cas. Co. v. Summerfield*, 482 P.2d 308, 310 (Nev. 1971). The starting
8 point for the interpretation of any contract is the plain language of the contract. *McDaniel v. Sierra*
9 *Health and Life Ins. Co., Inc.*, 53 P.3d 904 (Nev. 2002); *see also, Klamatch Water Users Protective*
10 *Ass'n v. Patterson*, 20 F.3d 1206, 1210 (9th Cir. 1999) ("Whenever possible, the plain language of
11 the contract should be considered first."). When a contract contains clear and unequivocal
12 provisions, those provisions shall be construed to their usual and ordinary meaning. *Dickenson v.*
13 *Nevada*, 877 P.2d 1059, 1061 (Nev. 1994). Then, using the plain language of the contract, the court
14 shall effectuate the intent of the parties, which may be determined in light of the surrounding
15 circumstances. *See 2 NGA #2 Ltd. Liab. Co. v. Rains*, 133 Nev. 1151, 1158 (1997); *see also,*
16 *Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991); *Klamatch Water Users*, 20
17 F.3d at 1210 ("Contract terms are to be given their ordinary meaning, and when the terms of a
18 contract are clear, the intent of the parties must be ascertained from the contract itself.").
19 In the absence of ambiguity, contract interpretation is an issue of law for the court, and may
20 be decided on a motion to dismiss. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d
21 913, 916 (Fed. Cir. 1984). A contract term is ambiguous if it is "reasonably susceptible to more
22 than one interpretation." *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003).
23 ///
24 ///
25 ///
26

**III. Discussion**

    **A. Motion to Dismiss**

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). The court shall address each element below.

    **1. Valid Contract**

MetLife argues that there are three contracts governing the relationship between the parties: (1) the FEGLI Policy;[5] (2) the accompanying certificate of insurance;[6] and (3) the TCA Customer Agreement.[7] In opposition, Keife argues that the only governing contract is the FEGLI Policy.

The court has reviewed the documents and pleadings on file in this matter and finds that the FEGLI Policy is the sole governing contract between the parties relating to the payment of Betty May Keife's death benefits. Sections 8, 9, and 10 of the FEGLI Policy establish that it is to be the sole agreement between the parties and that neither the certificate of insurance nor the TCA Customer Agreement can amend the FEGLI Policy. *See* Doc. #35. The relevant sections of the FEGLI Policy state as follows:

> Section 8. ENTIRE CONTRACT: INCONTESTABILITY. This policy and the application of the policyholder, a copy of which is attached hereto, constitute the *entire contract between the parties*. (Emphasis added)
>
> Section 9. AGENTS: ALTERATIONS – No Agent of the Insurance Company is authorized to alter or amend this Policy, to accept premiums in arrears or to extend

---

[5] Doc. #38, Exhibit A.

[6] The Office of Personnel Management provides certificates of insurance to employees insured under the FEGLI Policy. Pursuant to OPM procedures, the Life Insurance Election Form (attached as Exhibit C to the corrected exhibits (Doc. #38)) and the FEGLI Booklet (attached as Exhibit B to the corrected exhibits (Doc. #38)) constitute the employee's certificate of insurance.

[7] Doc. #38, Exhibit G; Doc. #38, Exhibit H.

5

> the due date of any premium, to waive any notice or proof of claim required by this Policy, or to extend the date before which any such notice or proof must be submitted.
> No change in this Policy shall be valid unless evidenced by amendment hereto signed by the Policyholder and by the Insurance Company.
>
> Section 10. CERTIFICATES – The Office will provide the Policyholder with certificates, for delivery to each Employee issued hereunder, setting forth the benefits to which such Employee is entitled under this Policy, to whom such benefits are payable, to whom notice and proof of claim should be submitted and summarizing the provisions of this Policy principally affecting the Employee. Doc. #38, Exhibit A.

These sections specifically provide that the FEGLI Policy alone constitutes the "entire contract between the parties." Doc. #38, Exhibit A, Section 8. Further, the unambiguous plain language of these policy sections specifically prohibit MetLife from issuing a policy booklet or insurance certificate which purports to alter or amend the policy and its obligations. Therefore, the court finds that the FEGLI Policy is the sole contract governing the payment of the death benefits.

**2. Breach**

Section 5 of the FEGLI Policy governs the payment of death benefits. Section 5 states:

> Section 5. INSURING CLAUSES – (A) Life Insurance – Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any (plus interest, if any, as determined by the Insurance Company) in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death. *Payment shall be made to the Beneficiary of record of the Employee* or otherwise as provided in Section 11 hereof *immediately after receipt of such proof and of proof that the claimant is entitled to such payment*. (Emphasis Added). Doc. #38, Exhibit A.

Under the plain language of Section 5, MetLife was obligated to pay Kiefe the death benefits (1) immediately, and (2) in one sum, after receiving a completed claims form. Keife argues that MetLife breached these specific contractual obligations when it credited a TCA in his name but retained the death benefits in its general account.

MetLife concedes that it was obligated to pay Keife the death benefits immediately, and in one sum. However, MetLife argues that it met its obligations by crediting Keife a TCA in which he could, at any time, write checks for any amount including the full amount of the account. Further,

6

MetLife argues that Section 5 of the FEGLI Policy does not specify a form or manner for payment and that by placing Keife's benefits into a TCA and providing him a check booklet upon which to draw those funds, it paid the death benefits immediately, and in one sum.

The court has reviewed the documents and pleadings on file in this matter and finds that Keife has sufficiently alleged that MetLife breached its obligations to pay the death benefits immediately, and in one sum. Although MetLife argues that it paid Keife's death benefits immediately upon receipt of his completed claims form by crediting the full amount of the benefits to a TCA and sending him a checkbook to draw upon the TCA, the court finds that MetLife did not make an immediate payment of the benefits because MetLife maintained possession and control of the funds while they were in the TCA. Until Keife draws on the account, the funds represented by the checkbook are not in Keife's possession. Rather, they are maintained in MetLife's general operating account and MetLife has the use of those funds for its own benefit. Therefore, the court finds that crediting a TCA does not constitute immediate payment of the death benefits and, as such, Keife has sufficiently alleged that MetLife breached the FEGLI Policy. *See e.g., Mogel v. UNUM Life Insurance Co.*, 547 F.3d 23, 26 (1st Cir. 2008) ("The difference between delivery of a check and a checkbook . . . is the difference between UNUM retaining or UNUM divesting possession of Plainitff's funds. . . . Until a beneficiary draws a check on the Security Account, the funds represented by that check are retained by UNUM and UNUM has the use of the funds for its own benefit. To say that the funds are "deemed to belong" to the beneficiaries obscures the reality that UNUM had possession of them and enjoyed their use.").

**3. Damages**

An essential element of a breach of contract claim is a showing that defendant's alleged breach caused damages to the plaintiff. *Saini*, 434 F. Supp. 2d at 919-920.

MetLife argues that Keife has failed to allege any facts establishing that he was damaged by MetLife's conduct because he received interest on the funds while they were in his TCA that he

7

would not have otherwise received if he was paid by check. However, the court finds that Keife has sufficiently alleged damages based on the different rate of interest he could have received from April 2009, when his TCA was opened, through July 2009, when he closed his TCA, from readily available financial markets than the low rate of interest he received from MetLife during that same time. Accordingly, the court shall deny MetLife's motion to dismiss.

**IV.     Motion to Supplement (Doc. #43) and Motion to File Sur-Reply (Doc. #50)**

After the motion to dismiss was fully briefed, Keife filed the present motion to supplement his opposition to include information obtained by MetLife from MetLife's initial discovery responses. The court shall deny Keife's motion to supplement because MetLife's motion to dismiss is based solely on the allegations in the complaint. Any initial discovery provided by either party is not properly considered by the court.

In light of the court's order on the motion to supplement, the court finds that a sur-reply to Keife's requested supplemental opposition is unnecessary. Accordingly, the court shall deny MetLife's motion to file a sur-reply.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Doc. #27) and motion to file a sur-reply (Doc. #50) are DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to supplement (Doc. #43) is DENIED.

IT IS SO ORDERED.

DATED this 27th day of April, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE